IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **KHADIJAH DAVIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. _____ |
| v. | ) |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| **HYUNDAI MOTOR** | ) |
| **MANUFACTURING,** | ) |
| **ALABAMA, LLC** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff **Khadijah Davis** ("Plaintiff" or "Davis") brings this civil action for relief and damages against Defendant **Hyundai Motor Manufacturing, Alabama, LLC** ("Defendant" or "Hyundai"), based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. This action to correct unlawful employment practices arises under the Americans with Disabilities Act of 1990 ("ADA"), as amended in 2008, 42 U.S.C.A. § 12101, *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. §2615(a)(2).

1

## PRELIMINARY STATEMENT OF THE CASE

2.  Khadijah Davis ("Davis"), an assembly line worker at the Hyundai plant in Montgomery, Alabama, periodically suffers seizures and has been diagnosed as epileptic. Her condition is ordinarily treatable with medication and there is no evidence that it ever disrupted her abilities to perform the essential functions of her job.

3.  Davis was terminated less than ten days after she suffered a seizure while on company premises and applied for intermittent leave under the FMLA. Davis seeks economic damages, including back pay, front pay, lost benefits, including the cost of health insurance; compensatory damages for mental anguish and emotional distress to the extent allowed by law; liquidated damages under the FMLA; and her attorneys' fees and costs of litigation.

## THE PARTIES

4.  Davis is a resident of Montgomery County, Alabama. During the time of the events alleged in this complaint, she was employed at the Hyundai production plant in Montgomery.

5.  At all times relevant to this complaint, Davis was an individual with physical impairments that substantially limited one or more major life activities, 42 U.S.C.A. § 12102(1)(A)-(2)(A). Specifically, Plaintiff suffered from an epileptic

2

condition that causes periodic seizures. At all relevant times, Plaintiff was qualified to perform the essential functions of her position.

6. Davis was an employee entitled to a benefit under the FMLA, in that her epilepsy constituted a serious health condition for which she sought to take intermittent medical leave.

7. Hyundai is a covered entity under Title I of the ADA, 42 U.S.C.A. § 12111(5)(A), as well as the FMLA, 29 U.S.C.A. § 2611(4)(A)(i).

**PERSONAL JURISDICTION**

8. Hyundai may be served with proper process through its registered agent on record with the Alabama Secretary of State, CT Corporation System, at 2 North Jackson St., Suite 605, Montgomery, AL 36104.

**SUBJECT MATTER JURISDICTION AND VENUE**

9. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

10. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in and the alleged unlawful acts occurred in this judicial district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On November 1, 2023, Davis filed a charge of disability discrimination against Hyundai with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 420-2024-00819.

12. Davis subsequently received a Right-to-Sue letter from the EEOC on January 16, 2025. A copy is attached as Exhibit A.

13. Plaintiff timely files her ADA claim within 90 days of receiving her Right-to-Sue letter.

## FACTUAL ALLEGATIONS

14. Khadijah Davis was hired in November 2020 as a member of the chassis division of the General Assembly section of the Hyundai production plant in Montgomery.

15. Davis suffers from periodic seizures due to an epileptic condition. Her condition is generally treatable with medication.

16. In mid August of 2023, Davis lodged a formal complaint with the Team Relations department, which investigates employee grievances at Hyundai, that she was being subjected to threats and harassing behavior from a male team member in her division.

17. In the course of the investigation, the employee whom Davis accused of misconduct responded with an allegation of his own that Davis had engaged in inappropriate provocative behavior toward him and other male employees.

18. In late August 2023, Team Relations investigators informed Davis that the investigation was inconclusive and that no further action would be taken.

19. On September 12, 2023, Davis began to experience signs of dizziness that from experience she associated with an oncoming seizure. Davis informed her team leader that she feared she was becoming ill and reported to Hyundai's onsite medical facility where she experienced a seizure episode.

20. After further treatment at a Montgomery hospital, Davis returned to Hyundai on September 13 to receive a fitness for duty evaluation. Davis advised Hyundai's medical staff that doctors treating her at the hospital had prescribed her a new anti-seizure medication.

21. Davis was cleared to return to work with no restrictions and disclosed her seizure to her team and group leader. She was advised of her FMLA rights and at the advice of Hyundai leave personnel, filled out an application for intermittent FMLA leave.

22. Davis returned to her shift on September 14. She was immediately confronted by a manager and team relations manager who notified her that she was being placed on suspension until further notice.

23. Davis was not given an explanation for her suspension.

24. On September 21, 2023, Davis called the Human Resources department for an update on her status and was advised that she had been terminated.

25. That same day, Hyundai sent Davis a letter advising her that she had been fired for inappropriate sexual behavior at work.

26. In the course of the EEOC investigation of this matter, Hyundai presented factual details that are contradicted by other evidence. For example, Hyundai contended that the investigation of Davis' supposed misconduct continued from August through a date on or about September 12: in fact, Davis was told by a team relations manager in late August 2023 that the investigation had finished and was inconclusive.

27. Hyundai further contended to the EEOC that Davis was fired because there was a finding of behavior on her part that merited what the company calls a serious misconduct sanction, and that this was the second misconduct writeup she received in a 30 day period: the first incident had to to do with use of a cell phone

6

during a shift. Hyundai's representation to the EEOC was that company policies dictate that two serious misconduct findings in a 30 day window mandate termination.

28. But the termination notice to Davis made no reference to any earlier disciplinary act or successive infraction policy and describes only the finding of inappropriate sexual behavior.

29. Hyundai's defense to the EEOC was that its Workplace Violence Committee ("WVC") met on September 12, 2021, the same day as the seizure, and reached a decision to terminate Davis with no knowledge of her medical event that day.

30. In fact, Hyundai's policies require that termination decisions are reached by an monthly employee review committee administered by the head of Team Relations. At most, the WVC would have had authority to recommend a Serious Misconduct finding regarding Davis, with the ultimate determination of termination reserved for the review committee.

31. Hyundai's termination review process involves disclosure of Davis' contemporaneous personnel file to the head of Team Relations. The contents of that file would have likely included her application for FMLA leave.

32. Hyundai's justifications for its firing of Davis are belied by its own termination protocol, its communications with Davis in August 2023, and its own written description of her termination: these divergences between fact and narrative strongly infer that Hyundai's explanations are a pretext for unlawful discrimination.

33. Hyundai's personnel handbook further permits employees to challenge serious misconduct findings or termination through an extended process, beginning with an appeal to the senior leadership in their department and culminating with consideration of an internal review panel of senior-level Hyundai directors.

34. Davis was never told of her rights to challenge discipline or termination under Hyundai's administrative processes. Deviation from established company policies is another indicator of illegal pretext.

35. Davis' seizure at work, and her application for intermittent FMLA leave, created a perception on the part of decisionmakers at Hyundai that she posed a safety risk to herself and others, and they in turn fired her to eliminate the risk. To make that decision in the absence of medical evidence violates the ADA and the FMLA.

## CAUSES OF ACTION

## COUNT I

### (Disability discrimination under the Americans with Disabilities Act, 42 U.S.C.A. § 12112(a))

36. Plaintiff incorporates by reference the preceding factual allegations of this complaint as though set forth fully and separately herein.

37. Defendant Hyundai is a covered entity under the ADA. 42 U.S.C.A. § 12111(5)(A).

38. Plaintiff at all times relevant to this complaint was a person with an ADA-qualifying disability in that she suffered from physical impairments in the form of recurrent seizures, but she could perform her job without requiring accommodations.

39. Hyundai's termination of Plaintiff within nine days of a workplace seizure reflected discrimination based on her disability.

40. As a result of Hyundai's unlawful disability-based discrimination, Plaintiff has suffered economic damages, including but not limited to loss of back pay, front pay, and benefits; noneconomic compensatory damages related to mental anguish, emotional distress, humiliation, and embarrassment. Plaintiff is also entitled to recover the costs of litigation and attorneys' fees.

# COUNT II

## (Retaliation in violation of the Family Medical Leave Act, 29 U.S.C.A. § 2615(a)(2))

41.   Plaintiff incorporates by reference the preceding factual allegations in paragraphs in this complaint as though set forth fully and separately herein.

42.   Defendant Hyundai is a covered entity under the FMLA. 29 U.S.C.A. § 2611(4)(A)(i).

43.   Plaintiff was an eligible employee under the FMLA in that when she sought to exercise her right to take leave under the FMLA, she had been employed by Hyundai more than 12 months or 1,250 hours during the previous 12-month period. 29 U.S.C.A. § 2611(2)(A)(i-ii).

44.   Plaintiff engaged in statutorily protected conduct under the FMLA in that she exercised her right to apply for intermittent leave under the FMLA for a serious medical condition.

45.   Hyundai's termination of Plaintiff was based on her application for intermittent medical leave and the implicit suggestion that she was at risk for future seizures, which violates the anti-retaliation provision of the FMLA.

46.   As a result of Hyundai's retaliatory conduct, Plaintiff suffered monetary damages, including lost back pay and front pay, and based on the willful

nature of Defendant's conduct, Plaintiff is entitled to liquidated damages. Plaintiff is also entitled to recover the costs of litigation and attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages under the ADA to the full extent allowed by law.

C. Liquidated damages under the FMLA.

D. Punitive damages.

E. Attorneys' fees and costs of litigation.

F. Prejudgment and post-judgment interest at the highest lawful rate.

G. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted the 16th day of April 2025.

**HKM Employment Attorneys LLP**

<u>s/Artur Davis</u>
Artur Davis
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935

adavis@hkm.com

**Attorney for Plaintiff Khadijah Davis**