IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KHADIJAH DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-292-JTA |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hyundai Motor Manufacturing Alabama, LLC's Motion for Summary Judgment. (Doc. No. 34.)[1] Defendant seeks summary judgment on all of Plaintiff Khadijah Davis's claims. For the reasons set forth below, the motion for summary judgment will be granted.

## I.     JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action based on federal question jurisdiction because Plaintiff brings claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a), and the Family Medical Leave Act, 29 U.S.C. § 2615(a)(2). *See* 28 U.S.C. § 1331.

The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama.

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636. (Doc. No. 13.)

## II.    PROCEDURAL HISTORY AND ALLEGATIONS

On April 16, 2025, Plaintiff filed her complaint against Defendant. (Doc. No. 1.) Plaintiff alleges Defendant hired her in November 2020 as a member of the chassis division of the General Assembly section of the Hyundai production plant in Montgomery, Alabama. (*Id*. at 4.) Plaintiff alleges she suffers from seizures due to an epileptic condition and, on September 12, 2023, she experienced a seizure while at work. (*Id*. at 4, 5.) Plaintiff maintains she applied for intermittent FMLA leave on September 13, 2023. (*Id*.) The next day, Plaintiff returned to work and was placed on suspension. (*Id*. at 6.) Plaintiff alleges Defendant sent her a letter, dated September 21, 2023, informing her she had been fired for inappropriate sexual behavior at work. (*Id*.) Based on these allegations, Plaintiff brings two claims: (1) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); and (2) retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2).

On February 24, 2026, Defendant filed its motion for summary judgment. (Doc. No. 34.) Plaintiff filed a response to the motion, and Defendant filed a reply. (Doc. No. 37; Doc. No. 40.)

The motion for summary judgment is ripe for review.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hitt v. CSX Transportation, Inc*.,

116 F.4th 1309, 1315 (11th Cir. 2024) (citation modified). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As stated in

*Celotex*, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

## IV.    FACTS[2]

In November 2020, Defendant hired Plaintiff as a production team member at Defendant's vehicle manufacturing plant in Montgomery, Alabama. (Doc. No. 34-1 at 5–6.) Plaintiff worked under the supervision of three people: (1) Eli Phillips, the team lead; (2) Scott Manning, the group leader; and (3) Stevan Cleveland, the manager of General Assembly. (*Id*. at 9.)

Plaintiff has an epileptic condition which causes her to have recurrent seizures. (Doc. No. 34-1 at 12.) From February 2022 to June 2022, Plaintiff took intermittent FMLA leave. (*Id*. at 14.) Plaintiff did not remember whether this leave was related to her epileptic condition. (*Id*. at 14) Sometime in 2023, Plaintiff told Phillips she suffered periodic seizures after he asked her why she was not coming to work. (*Id*. at 15.)[3] Plaintiff did not notify anyone else at Defendant's manufacturing plant about her epileptic condition. (*Id*. at 15.)

---

[2] Where evidence conflicts or competing inferences may be drawn, the facts are set forth in the light most favorable to the nonmoving party. *See Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019). Otherwise, the material facts are undisputed.

[3] Although Plaintiff felt like Manning knew about her epileptic condition, she stated she did not know whether Manning had knowledge of her seizures before September 12, 2023. (Doc. No. 34-1 at 35.) Manning stated he was not informed Plaintiff was having seizures. (Doc. No. 34-3 at 18.)

On August 15, 2023, Plaintiff was issued a corrective action for violating Defendant's cell phone policy. (Doc. No. 34-1 at 10–11.) Defendant issued a serious misconduct letter to Plaintiff, which informed her the letter would remain active in her file for a period of 36 months. (*Id*. at 11.) Plaintiff understood that if she committed another act of serious misconduct within the 36-month period, she would be terminated. (*Id*.)

On August 16, 2023, Plaintiff reported that a fellow team member, Erick Wilson, made threatening comments and displayed threatening behavior towards her. (Doc. No. 34-1 at 19; Doc. No. 34-6 at 2–3; Doc. No. 37-4 at 1.)[4] Defendant's team relations department investigated Plaintiff's complaint and interviewed potential witnesses on August 22 and 23, 2023. (Doc. No. 34-6 at 2–3.) During the investigation, Wilson alleged Plaintiff threatened him with a hole puncher and had previously made inappropriate sexual comments and gestures towards him. (Doc. No. 34-6 at 3, 47; Doc. No. 37-5 at 2.) The investigators interviewed seven potential witnesses. (Doc. No. 34-6 at 47–51; Doc. No. 37-5 at 2.)[5] None of the witnesses were able to corroborate whether Wilson or Plaintiff threatened each other. (Doc. No. 34-5 at 17; Doc. No. 37-5 at 3–8.) Of the seven witnesses interviewed, three were asked whether they saw Plaintiff engage in any sexually inappropriate behavior at work. (Doc. No. 34-6 at 48–51; Doc. No. 37-5 at 3–6.) One

---

[4] According to Plaintiff, Wilson approached her in the breakroom, called her a "bitch" and a "hoe," and said, "I'll hit you in your shit." (Doc. No. 37-4.) On the same day, Plaintiff and Wilson texted via Facebook messenger. (Doc. No. 37-3.) Wilson called Plaintiff a "bitch" and liar, and said "fuck you" to Plaintiff. (Doc. No. 34-6 at 59; Doc. No. 37-3 at 2.)

[5] Manning sat in on the witness interviews. (Doc. No. 34-3 at 22.)

witness stated Plaintiff made "insane comments and gestures" like "ma[king] her butt jiggle" and grabbing/touching her breasts and nipples. (Doc. No. 34-6 at 21, 50; Doc. No. 37-5 at 5).[6] Plaintiff denied she ever engaged in inappropriate behavior at work. (Doc. No. 34-1 at 23.) Defendant's team relations department summarized the investigation in a report dated August 29, 2023. (Doc. No. 34-6 at 46–59; Doc. No. 37-5 at 1–14.)

On September 6, 2023, Plaintiff received a formal discussion letter regarding her attendance. (Doc. No. 37-2.) According to the letter,[7] due to an unexcused absence, Plaintiff's attendance had dropped to 96.12%. (*Id.*)

On September 12, 2023, Defendant's Employment Review Committee ("ERC") met to discuss the investigation into the allegations of workplace violence and sexual misconduct. (Doc. No. 34-5 at 21; Doc. No. 34-7 at 7.) The ERC consisted of six people, including Reginald Williams, the senior manager of Human Resources. (Doc. No. 34-7 at 7.) Plaintiff's direct supervisors—Phillips, Manning, and Cleveland—were not a part of the ERC meeting. (*Id.*)  Williams served as the decisionmaker on the ERC. (Doc. No. 34-5 at 6.) According to Williams, he had no knowledge of Plaintiff's medical condition at the time of the ERC meeting, her medical condition was not discussed at the meeting, and he

---

[6] This witness described Plaintiff's behavior as "playful gestures" that were "flirtatious," and stated no one took them seriously because they were used to it. (Doc. No. at 34-6 at 21, 50; Doc. No. 37-5 at 5.) One witness stated she never saw or heard Plaintiff make any inappropriate sexual comments or gestures. (Doc. No. 34-6 at 51; Doc. No. 37-5 at 6.) The other witness stated he had never heard Plaintiff make inappropriate sexual comments or gestures, but that Plaintiff had called Wilson "handsome" and said she liked him. (Doc. No. 34-6 at 50; Doc. No. 37-5 at 5.)

[7] The letter indicated it was the second step in addressing Plaintiff's poor work attendance, following an April 10, 2023 informal discussion. (Doc. No. 37-2 at 1.)

did not review anything pertaining to Plaintiff taking FMLA leave before the meeting. (Doc. No. 34-5 at 5, 8–9, 19, 20–22.) During the ERC meeting, Williams decided to terminate Plaintiff's employment. (Doc. No. 34-5 at 13–14, 21; Doc. No. 34-8 at 3.) According to Williams, his decision to terminate Plaintiff's employment was based on witness evidence that she violated Defendant's Equal Employment Opportunity ("EEO") policy by engaging in inappropriate behavior. (Doc. No. 34-5 at 13–14.) At 4:17 p.m. on September 12, 2023, the Assistant Manager of the Team Relations Department sent an email to several employees and managers of the Team Relations Department stating Plaintiff was terminated for inappropriate behavior. (Doc. No. 34-8 at 3, 6.)

Sometime after 2:30 p.m. on September 12, 2023, Plaintiff began experiencing symptoms associated with an impending seizure. (Doc. No. 34-1 at 16, 24.) Plaintiff told Phillips she was about to have a seizure, and in turn he told Manning. (*Id*. at 16.) Manning wrote Plaintiff a pass to go to the on-site medical clinic. (*Id.* at 16.) While at the clinic, Plaintiff had a seizure and was taken to the hospital. (*Id*. at 13.) Williams claims he had no knowledge of Plaintiff's seizure on September 12, 2023. (Doc. No. 34-5 at 11, 18, 21.)

On September 13, 2023, Plaintiff returned to work and requested FMLA leave. (Doc. No. 34-1 at 13.) On September 14, 2023, Cleveland informed Plaintiff she had been suspended, but did not provide a reason for the suspension. (*Id*. at 13–14, 25–26.) Thereafter, Plaintiff received a letter, dated September 21, 2023, which explained she was terminated due to inappropriate sexual gestures and comments she made while at work. (Doc. No. 34-1 at 30–31; Doc. No. 34-9 at 2.)

## V.    DISCUSSION

Defendant argues there is no genuine issue of material fact, so it is entitled to summary judgment on Plaintiff's claims. The Court addresses each claim in turn.

### A. ADA Discrimination

"The ADA bars employers from 'discriminating against a qualified individual on the basis of disability.'" *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (quoting 42 U.S.C. § 12112(a)) (citation modified). A plaintiff may establish a prima facie case of disability discrimination under the *McDonnell Douglas* framework. *Akridge*, 93 F.4th at 1191 (citing *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021)). To establish a prima facie case of disability discrimination, a plaintiff must show "(1) she has a disability; (2) she is a qualified individual under the ADA; and (3) the employer discriminated against her 'on the basis of disability.'" *Id*. at 1191–92 (quoting 42 U.S.C. § 12112(a)). If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for its decision." *Id*. If the employer meets its burden, then the burden shifts back to the plaintiff "to present sufficient evidence creating a genuine issue of material fact that the employer's reason is pretext for discrimination." *Id*.

A plaintiff may also survive summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Akridge*, 93 F.4th at 1197 (citing *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)); *see also Ismael v. Roundtree*, 161 F.4th 752, 765 (11th Cir. 2025) (If a plaintiff fails to establish a prima facie case, the district court "should advance directly to the

8

convincing mosaic inquiry."). A convincing mosaic "may be made up of, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge*, 93 F.4th at 1198 (citation modified).

Defendant argues the Court should grant summary judgment on Plaintiff's disability discrimination claim because Plaintiff cannot present a prima facie case of discrimination; it has a legitimate, nondiscriminatory reason for Plaintiff's termination; and Plaintiff cannot show a convincing mosaic of circumstantial evidence. The Court first addresses the *McDonnell Douglas* framework, then turns to the convincing mosaic inquiry.

1. *McDonnell Douglas* Framework

Defendant argues Plaintiff cannot establish a prima facie case of disability discrimination because Plaintiff cannot show it discriminated against her on the basis of her disability. (Doc. No. 34 at 14.) In order to show discrimination on the basis of disability, Plaintiff must show her disability was the but-for cause of her termination. *Akridge*, 93 F.4th at 1192. Defendant argues Plaintiff cannot show her disability was the but-for cause of her termination because Williams—the decisionmaker for her termination—had no knowledge of Plaintiff's seizure on September 12, 2023, or her epileptic condition prior to deciding to terminate her employment. (Doc. No. 34 at 13–15.); *see Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005) ("[I]t is evident that an employee cannot be fired 'because of' a disability unless the decisionmaker has *actual* knowledge of the disability." (emphasis in original)). Plaintiff responds that she is not required to establish

or prove a prima facie case to survive summary judgment. (Doc. No. 37 at 10.) Instead, Plaintiff argues she has presented a convincing mosaic of evidence that would allow a jury to infer intentional discrimination. (*Id.* at 17.) Because Plaintiff does not attempt to establish a prima facie case of disability discrimination under the *McDonnell Douglas* framework, the Court concludes she has not established a prima facie case of disability discrimination under the *McDonnell Douglas* framework.

2. Convincing Mosaic

As Plaintiff correctly notes, if she "cannot establish a prima facie case, she does not automatically lose on summary judgment." *Ismael*, 161 F.4th at 764. Plaintiff can survive summary judgment by "present[ing] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Ismael*, 161 F.4th at 760.[8] Even when relying on the convincing mosaic standard, "the inference to be drawn by a jury must be that the employee's disability was a but-for cause of the employer's intentional discrimination." *Akridge*, 93 F.4th at 1197. Plaintiff argues she has demonstrated a convincing mosaic of circumstantial evidence that her disability was the but-for cause of her termination. (Doc. No. 37 at 16.) Defendant replies Plaintiff has not presented any evidence that Williams knew of her disability before he terminated her employment. (Doc. No. 40 at 4.)

---

[8] The convincing mosaic analysis "despite its flowery language . . . is a stand-in for the Rule 56 summary judgment standard applied to employment discrimination." *Ismael*, 161 F.4th at 760; *see also Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946–47 (11th Cir. 2023) (describing the convincing mosaic standard as a "rearticulation of the summary judgment standard").

Here, Plaintiff has failed to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination *by the decisionmaker*." *Ismael*, 161 F.4th at 760 (emphasis added; citation modified). Plaintiff does not dispute that Williams was the decisionmaker who terminated her employment. (Doc. No. 37 at 6.) Plaintiff has presented no evidence that Williams had knowledge of her epileptic condition before he decided to terminate her employment on September 12, 2023.[9] Likewise, although Manning sat in on the interviews during the investigation of Plaintiff's complaint against Wilson, Plaintiff presents no evidence—only unsupported conjecture—that Manning knew about her epileptic condition. The uncontroverted evidence shows Phillips was the only person with knowledge of Plaintiff's epileptic condition before September 12, 2023, and Phillips was not at the ERC meeting or involved with Plaintiff's termination.

Plaintiff argues a jury is entitled to discredit Williams's testimony that he had no knowledge of her epileptic condition for two reasons. (Doc. No. 37 at 11–13.) First, Plaintiff points to Williams's alleged contradictory testimony concerning his knowledge of the ADA. (*Id.*)[10] Second, Plaintiff argues Williams's testimony should be discredited because he testified that Wilson calling Plaintiff a "bitch" and a liar does not corroborate

---

[9] Plaintiff argues the "suspicious timing" of her FMLA request and her termination could allow a jury to infer intentional discrimination. (Doc. No. 37 at 16.) But, Plaintiff requested FMLA on September 13, 2023, one day *after* Williams decided to terminate her employment.

[10] Plaintiff alleges Williams provided contradictory testimony about the ADA because he testified he could not speak to rights given to employees under the ADA, but then testified he knew that the ADA protects employees with disabilities. (Doc. No. 37 at 12–13.)

the idea that Wilson was comfortable using vulgar language towards Plaintiff.[11] (*Id.* at 13.) Even if the Court were to determine Williams's testimony concerning the ADA and Wilson's use of vulgar language was contradictory or incredible, it would not impact the credibility of Williams's testimony that he had no knowledge of Plaintiff's epileptic condition. Plaintiff offers no evidence to suggest Williams knew about Plaintiff's epileptic condition before he decided to terminate her employment.[12]

Plaintiff further argues that she has sufficiently shown Defendant's reason for her termination was pretextual. Plaintiff argues she has shown pretext because (1) only one witness corroborated Wilson's allegation that she engaged in sexually inappropriate

---

[11] To support her argument that a jury could discredit Williams's testimony, Plaintiff cites to three cases, yet all are distinguishable. (Doc. No. 37 at 10–11.) In each case, the plaintiff introduced evidence discrediting the decisionmaker's testimony, but also introduced other types of evidence that allowed a jury to infer discrimination occurred. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (reversing a judgment as a matter of law after a jury verdict in the plaintiff's favor because "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194–95 (11th Cir. 2004) (reversing the district court's grant of judgment as a matter of law when the employer gave shifting justifications for the plaintiff's termination and "additional evidence allowed the jury to infer disability discrimination"); *Holland v. Gee*, 677 F.3d 1047, 1062–63 (11th Cir. 2012) (affirming a district court's decision to sustain the jury's finding of liability when there was evidence the plaintiff was treated differently because of her pregnancy, her pregnancy was part of the reason for her transfer, her pregnancy was part of discussions that led to the plaintiff's termination, and the credibility of the decisionmaker was called into question). Here, aside from questioning Williams's credibility, Plaintiff presents no other evidence to support a finding of intentional disability discrimination.

[12] Without any citation to the record, Plaintiff states Williams gave "inconsistent and implausible testimony as to the reason he terminated" Plaintiff. (Doc. No. 37 at 16.) Williams's testimony was not inconsistent in this regard. Williams maintained he decided to terminate Plaintiff's employment because a witness corroborated that Plaintiff engaged in inappropriate conduct at work. (Doc. No. 34-5 at 13–14.)

behavior at work; (2) she denied engaging in such conduct during her deposition;[13] and (3) a jury is entitled to discredit Williams's testimony that he terminated Plaintiff for violating Defendant's EEO policy. (Doc. No. 37 at 13–16.) Yet, "[a] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Akridge*, 93 F.4th at 1196 (emphasis in original) (quotation omitted). Beyond mere conjecture and speculation, Plaintiff has not shown Williams, nor anyone else involved in her termination, knew about her disability before she was terminated. "Such 'speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Akridge*, 93 F.4th at 1196 (quoting *Cordoba*, 419 F.3d at 1181).

Accordingly, Plaintiff has not shown a convincing mosaic of circumstantial evidence that Defendant discriminated against her on the basis of her disability, and thus, summary judgment is warranted. *See Akridge*, 93 F.4th at 1198–99 (finding there was no convincing mosaic of circumstantial evidence of disability discrimination when the plaintiff failed to show pretext or that the decisionmakers had knowledge of the basis of her disability claim).

---

[13] Plaintiff argues that her denial here must be credited and cites *Phillips v. Legacy Cabinets* to support her argument. (Doc. No. 37 at 14–15.) In *Phillips*, the Eleventh Circuit held the plaintiff had sufficiently shown her employer's reason for her termination was pretextual when the plaintiff denied engaging in any disrespectful conduct *and* produced evidence that she was treated more harshly than her similarly situated non-white comparators. *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 124–25 (11th Cir. 2023) ("It is not enough, in other words, for [the plaintiff] to prove that [the defendant] is lying about the true reason for her termination; to escape summary judgment, she must produce sufficient evidence for a reasonable jury to find that the true reason was discrimination."). Even if the Court were to credit Plaintiff's denial she engaged in sexually inappropriate behavior at work, Plaintiff has not produced any evidence showing her disability was the true cause of her termination.

## B. FMLA Retaliation

"To establish retaliation in violation of the FMLA, an employee must show that '[her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right.'" *Cooper v. Airbus Ams., Inc.*, No. 25-10378, 2026 WL 852233, at *11 (11th Cir. Mar. 27, 2026) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). A plaintiff must show that "[her] employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207 (citation modified). To establish discriminatory intent through circumstantial evidence, "a plaintiff may rely on the *McDonnell[]Douglas* framework or come forward with a convincing mosaic of circumstantial evidence." [14] *Cooper*, 2026 WL 852233, at *11 (citing *Strickland*, 239 F.3d at 1207; *Smith v. Lockheed-Martin, Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

To establish a prima facie case of FMLA retaliation, a plaintiff must allege that: "(1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland*, 239 F.3d at 1207. If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to "proffer a legitimate, nonretaliatory reason for the adverse action." *Berry*,

---

[14] Defendant appears to argue the Court should disregard the convincing mosaic analysis for Plaintiff's FMLA claim because "'the Eleventh Circuit has yet to decide in a published decision whether retaliation claims can survive summary judgment under a convincing mosaic theory.'"(Doc. No. 34 at 24 (quoting *Kent v. Garden City, Ga.*, No. 4:23-cv-307, 2025 WL 588999, at *14 n.5 (S.D. Ga. Feb. 24, 2025)). The Court disagrees. Contrary to Defendant's assertion, the Eleventh Circuit has applied the convincing mosaic standard "in equal measure to claims of discrimination and retaliation." *Ismael*, 161 F.4th at 760 (citing *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) ("An employee may rely on a convincing mosaic of circumstantial evidence to prove retaliation.")).

84 F.4th at 1307 (citation modified). If the defendant does so, the plaintiff "must prove that the employer's proffered reason was a pretext for retaliation." *Id*.

A plaintiff may also survive summary judgment by presenting a convincing mosaic of "any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Berry*, 84 F.4th at 1310. Types of circumstantial evidence may include "[1] evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; [2] evidence of systemically better treatment of similarly situated employees; or [3] evidence that the employer's justification for its action is pretextual." *Id*. at 1311. The circumstantial evidence must raise "a reasonable inference that the employer retaliated against the employee." *Id*. (quotation modified).

Defendant argues Plaintiff cannot establish a prima facie case of FMLA retaliation because she cannot show that the termination decision was causally related to protected activity. (Doc. No. 34 at 21.) Defendant argues the retaliation claim fails because Plaintiff requested FMLA on September 13, 2023, one day *after* Williams decided to terminate Plaintiff's employment. (*Id*. at 22.) Plaintiff responds that a reasonable jury could discredit Williams's testimony that he had no knowledge of Plaintiff taking or requesting FMLA leave in 2022 or 2023. (Doc. No. 37 at 17.) Defendants reply that Plaintiff offers no evidence to discredit Williams's testimony or any evidence to suggest Williams knew about Plaintiff's FMLA leave in 2022. (Doc. No. 40 at 19.)

As Defendant correctly notes, and Plaintiff does not dispute, she requested FMLA leave on September 13, 2023. It is also uncontested that Williams decided to terminate Plaintiff's employment on September 12, 2023, one day before Plaintiff requested FMLA

leave. Thus, Williams could not have retaliated against Plaintiff for requesting FMLA leave on September 13, 2023. Accordingly, Plaintiff's request for FMLA leave on September 13, 2023, cannot form the basis of her FMLA retaliation claim.[15]

Plaintiff appears to argue that her intermittent requests for FMLA leave from February 2022 to June 2022 form the basis for her FMLA retaliation claim. (Doc. No. 37 at 17.) However, as Defendant notes, Plaintiff's complaint does not allege she applied for FMLA leave in 2022. Plaintiff's complaint only mentions her request for FMLA leave on September 13, 2023. (Doc. No. 1 at 5.) "The law is well-established that a party cannot raise for the first time a new theory of liability in summary judgment briefing." *US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp. Est.*, 767 F. Supp. 3d 1331, 1362 (M.D. Fla. 2025) (citation modified); *see also Cacciamani v. Target Corp.*, 622 F. App'x 800, 804 (11th Cir. 2015) ("The district court correctly held that [the plaintiff's] new responsive theory at the summary-judgment stage was too little, too late. It is the complaint that must give the defendant notice of what the plaintiff complains."). Because Plaintiff did not include allegations related to her intermittent requests for FMLA leave from February 2022 to June 2022 in her complaint, these requests for leave cannot form the basis for Plaintiff's FMLA retaliation claim.[16]

---

[15] Plaintiff points to the formal discussion Plaintiff received on September 6, 2023, to suggest that Plaintiff's request and use of FMLA leave is causally related to Williams's decision to terminate her. (Doc. No. 37 at 17.) Plaintiff points to no evidence that Williams knew about the formal discussion or that the formal discussion was about Plaintiff's use of FMLA leave. Indeed, the formal discussion states Plaintiff had "unexcused/unpaid time" that dropped her attendance, which indicates she was not on FMLA leave. (Doc. No. 37-2.)

[16] Even if the Court were to consider Plaintiff's requests for FMLA leave in 2022, Defendant would still be entitled to summary judgment on Plaintiff's FMLA retaliation claim. Williams

Because Plaintiff produced no evidence Williams knew she requested FMLA leave before he decided to terminate her, Plaintiff has not established a prima facie case or a convincing mosaic of FMLA retaliation. *See Strickland*, 239 F.3d at 1207–08 (holding a plaintiff did not establish a prima facie case of FMLA retaliation when "the unrebutted evidence is that that the decision[]maker did not have knowledge that the employee had engaged, or was attempting to engage, in protected conduct" (quotation modified)); *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020) ("It is not [the decisionmaker's] burden to show that he did not know about [the plaintiff's] complaints; it is [the plaintiff's] burden to set forth evidence suggesting that he did.").[17]

### VI.   CONCLUSION

Accordingly, it is ORDERED as follows:

1. Defendant's motion for summary judgment (Doc. No. 34) is GRANTED.

2. Plaintiff's claims are DISMISSED with prejudice.

3. This action is DISMISSED with prejudice.

A separate final judgment will issue.

---

testified that he had no knowledge of Plaintiff taking or requesting FMLA leave. Plaintiff argues a jury could determine this testimony is not credible, but provides no evidence to contradict Williams's testimony.

[17] Plaintiff does not argue she has established a prima facie case or a convincing mosaic of FMLA retaliation. Rather, she simply argues a jury could determine Williams's testimony that he did not know Plaintiff requested FMLA leave is not credible. (Doc. No. 37 at 17.) Under either standard, Plaintiff has not produced any circumstantial evidence to show Williams knew about her FMLA requests before he decided to terminate her.

DONE this 14th day of May, 2026.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE